WILLIAMSON v. MILES, Administrator of GILBRECH.

ADMINISTRATOR'S SALES OF REAL ESTATE—VENUE.—The jurisdiction of the Court of Common Pleas of the county where. letters of administration have been granted, of an application by the administrator to sell real estate situated in another county, is not exclusive.

SAME—Proceedings by an administrator, for the sale of real estate were instituted in the Court of Common Pleas of the county in which the land was situated, the heirs of the deceased being residents of that county.

*Held*, that the court had jurisdiction of the subject matter of the suit, and of the persons of the heirs, though administration had been granted in another county.

APPEAL from the *Clay* Common Pleas.

ELLIOTT, J.—*Miles*, as administrator *de bonis non* of *Mary A. Gilbrech*, filed a petition in the Court of ·Common Pleas of *Clay* county, where letters of administration were granted him, praying for an order for the sale of real estate in *Putnam* county, The petition, among other things, alleges that said *Mary Gilbrech*, in 1858, died seized in fee of the north half of lot 32, in the eastern enlargement of the town of *Greencastle*, in *Putnam* county, in this State, of the probable value of $300; that no personal property has. come into the petitioners hands to be administered; that the indebtedness of the estate is about $250, including the expenses of administration. The names of the heirs, a part of whom are alleged to be minors are stated. The petition further stated, "That *Henry A. Gilbrech*, the former administrator of the estate, on the 4th day of *October*, 1859, filed his petition in the Court of Common Pleas of said county, of *Putnam*, for the sale of said property, and, by a subsequent order of said court, pretended to sell the same, without appraisement, on the 13th of *June*, 1860, for $300, to one *Abraham S. Squires*, and made a pretended deed to said *Squires* therefor, at the *June* term, 1860, of said court; that one *Tucker W. Williamson* claims title to said property, and holds the possession thereof as the grantee of said *Squires*. That said pretended sale was, and is, wholly void, for the reason that

the Court of Common Pleas of said county of *Putnam* had no jurisdiction of said petition, the letters having been taken out, and the estate of said decedent being then pending for settlement, in the county of *Clay;* that there was no appraisement, and no additional bond filed by said administrator for the sale of said property." Prayer, that said sale be set aside and the title to the property quieted, and for an order to sell the same for the payment of the debts, &c. *Williamson,* the purchaser of the lot from *Squires,* is made a party. He appeared and demurred to the petition, but the court overruled the demurrer. He then filed an answer of four paragraphs. The *first* was subseqently withdrawn, and is not, therefore, a part of the record.

The *third* paragraph alleges, "that on the————day of ————, 1860, *Gilbrech,* the then administrator of said estate, filed his petition in the *Putnam* Court of Common Pleas, the county in which the property is situated, and where the defendants and heirs then resided, and yet reside, praying for the sale of said real estate; and such proceedings were thereupon had, that, an appraisement having been duly made and filed, and the said administrator having executed his additional bond, as required by the court, and in pursuance to the statute, an order was granted for the sale of said real estate. That, in pursuance of the order, the administrator sold the same to said *Squires* for the sum of $350, that being more than the appraised value; that said sale was reported to and confirmed by the court, and the property duly conveyed to said *Squires,* by the order of the court, and possession given to him under said conveyance. That, on the 7th of *June,* 1863, *Squires* contracted and sold said lot to this defendant, *Williamson,* for the sum of $450, all of which purchase money has been fully paid, and that he is in possession of the same," &c.

A copy of the record of the proceedings in the Common Pleas Court of *Putnam* county, for the sale of the lot, and the report and confirmation of the sale to *Squires,* &c., is filed with, and made a part of, the answer. By this record,

it appears that the proceedings were all regular, and in strict conformity to the statute; that an appraisement of the lot was properly made and filed, and a bond given by the administrator, with sureties, in a penalty in double the appraised value of the lot, which was approved by the court; that an order was made directing it to be sold at private sale; that it was sold in strict compliance with said order, and for fifty dollars more than the appraised value. A demurrer was sustained to this paragraph of the answer, to which *Williamson* excepted.

On the final hearing, the court decreed that the sale to *Squires*, and the title of *Williamson*, be declared void and of no effect, and that *Williamson* be forever enjoined from in any manner setting up or claiming any title to the lot. An order was also granted for the sale of the lot, for the payment of the debts of the decedent.

The rulings of the court below, in overruling the demurrer to the petition, and in sustaining the demurrer to the third paragraph of the answer, present the questions for our consideration.

Passing by the question raised by the demurrer to the petition, we will examine the ruling upon the demurrer to the third paragraph of the answer, by which the whole merits of the controversy are more fully presented.

Two questions are presented and discussed by counsel on either side.   They are stated thus:

*First.* Had the Court of Common Pleas of *Putnam* county jurisdiction to order the sale of the real estate in controversy?

*Second.* The sale having been made by order of the Common Pleas Court of *Putnam* county, on the application and petition of *Gilbrech,* the former administrator of the estate, and the purchase money having been received by him, is the administrator *de bonis non* estopped from denying the validity of the sale, and especially, without having first refunded, or offered to refund, the purchase money paid by *Squires?*

The letters of administration were granted to *Gilbrech,* the original administrator, by the Court of Common Pleas of *Clay* county. The lot is situated in *Putnam* county, and was sold on the petition of *Gilbrech,* by order of the Court of Common Pleas of the latter county, and it is insisted by the appellee that, in such cases, the court granting the letters of administration has exclusive jurisdiction in ordering the sale of real estate for the payment of the decedent's debts, and that the sale of the lot to *Squires* is therefore void, for want of jurisdiction in the court granting the order.

The question is one of great practical importance, and has been one of much doubt and perplexity, both to the courts and bar of the State. Statutory provisions may be found from which inferences may, perhaps, be drawn on either side, yet there is no positive statute on the subject.

If it be legitimate, under such circumstances, to examine the reasons that should govern in fixing the rule, to aid us in determining the construction that should be given to the provisions of the statute, from which, of necessity, a rule must be drawn, the arguments will be found equally conflicting. On the one side, it may be desirable that the court of the county where administration is granted, and in which the estate must be finally settled, should have the evidence upon its own records of the disposition of the estate, both real and personal, administered on or sold by the administrator, as a means of guarding the assets from waste, and compelling their proper and prompt application to the purposes of the trust. It would, ordinarily, also, be more convenient to the administrator, and frequently less expensive to the estate, that the application should be made to the court where the letters of administration are granted. Whilst, on the other hand, it is perhaps equally desirable that the record of all proceedings and decrees, by which real estate is directed to be sold and the title transferred, should be found in the county where

the real estate lies; and this would be more nearly in accordance with the principle that governs the venue in actions on kindred subjects. We must therefore look to the provisions of the statute, alone, for a solution of the question.

In *Ex parte Shockley*, guardian, 14 Ind. 413, *Shockley* was appointed guardian of his wards by the Court of Common Pleas of *Hancock* county, and filed his petition for the sale of lands belonging to his wards, lying in *Bartholomew* county, in the Court of Common Pleas of the latter county. The court refused to entertain jurisdiction of the proceedings, on the ground that the Court of Common Pleas of *Hancock* county, by which the letters of guardianship were granted, had exclusive jurisdiction in the premises, and the case was affirmed on appeal to this court. The opinion of the court in the case, pronounced by WORDEN, J., is founded, principally, on the construction placed on sec. 4 of the act establishing Courts of Common Pleas, which reads thus: "The Court of Common Pleas, within and for the county, or counties, for, which it is organized, shall have original and exclusive jurisdiction in all matters relating to the probate of last wills and testaments, granting of letters testamentary, of administration, and of guardianship; of all matters relating to the settlement and distribution of decedents' estates, and the personal estates of minors, all actions against executors and administrators; to authorize guardians to · sell and convey real estate of their wards; and the appointment of guardians of persons of unsound mind; the examination and allowance of the accounts of executors and administrators, and of the guardians of minors; except where, in special cases, concurrent jurisdiction is given by law to some other court."

However desirable it may be to do so, we cannot concur in the construction given to this section of the statute by this court, in the case referred to. To our minds it seems clear, that the section of the statute just quoted, relates only to the particular class of cases, or the subject matter of actions

and proceedings, over which exclusive jurisdiction is given to the Court of Common Pleas, in contradistinction to the Circuit or other courts of the State, and has no relation whatever to the venue or particular county in which suits must be commenced. It enumerates the particular causes of action and proceedings which must be prosecuted in the Court of Common Pleas, and not in the Circuit Court, as exclusive jurisdiction of them is given to the former. It designates the Common Pleas as the court in which certain actions must be prosecuted or proceedings had, but it does not relate to the particular *county* or *place where* they shall be instituted. It defines the jurisdiction of the *court* as to the subject matter, but not the territorial jurisdiction for each particular action or proceeding. The next succeeding section, following up the same subject, serves to confirm and illustrate the view we have taken. It provides that "The Circuit and Common Pleas Courts shall have concurrent jurisdiction in all actions against heirs, devisees, and sureties of executors, administrators and guardians; in the partition of real estate, assignment of dower, and the appointment of a commissioner to execute a deed on any title bond given by a decedent."

It is evident that the 4th section simply defines the particular subjects over which exclusive jurisdiction is given to the Court of Common Pleas, whilst the 5th section enumerates those over which that court and the Circuit Court shall have concurrent jurisdiction. Sections 6 to 10, inclusive, are also referred to as still further sustaining the construction we have given the 4th section.

Article 3 of the code, under the title of "Actions—where commenced," 2 G. & H. 56, is in relation to the general subject under discussion, viz: the venue or county in which each particular action must be commenced, and whilst we find nothing in the article decisive of the particular question under consideration, we think that sections 28, 31 and 33 do shed more or less light on the subject.

Section 28 provides that, "Actions for the following causes must be commenced in the county in which the subject of the action, or some part thereof, is situated:

"*First.* For the recovery of real property, or of any estate or interest therein, or for the determination, in any form, of such right or interest, and for injuries to real property.

"*Second.* For the partition of real property.

"*Third.* For the foreclosure of a mortgage of real property."

Sec. 31. "An action to establish or set aside a will must be brought in the county in which the will, if valid, ought, according to law, to be proved and recorded."

Sec. 33. "In all other cases the action shall be commenced in the county where the defendants, or one of them, has his usual place of residence," &c.

The act providing for the settlement of decedents' estates authorizes the executor or administrator to petition "the court having jurisdiction" for an order to sell real estate for the payment of debts, but it does not define or indicate in what county the petition shall be filed.

Whilst the practice has not been uniform under our present statute, it is believed that in much the greater number of cases, where letters testamentary, or of administration, have been granted in one county, and the land sought to be sold for the payment of the decedent's debts lay in another county, the proceedings for such sale have been instituted in the county where the letters testamentary, or of administration, were granted.

It is to be regretted that a question involving so many titles to real estate should have been left so long in doubt and uncertainty, for the want of a definite legislative enactment.

After a careful review of all the statutory provisions to which we have been referred, or which we have been able to find, we do not think that exclusive jurisdiction, in such cases, is conferred by statute, either upon the court of the county

where the letters are granted, or where the land is situated. In other words, the applications for such sales are not rendered exclusively local. While, therefore, we do not feel authorized, in view of the statute, and of the long and very general practice under it, of instituting such proceedings in the county where the letters testamentary or of administration are granted, to deny the jurisdiction of the court of such county, in that class of cases, we, at the same time, find nothing to justify us in holding such jurisdiction to be exclusive.

In the case at bar, the proceedings for the sale of the lot were instituted in the Court of Common Pleas of the county in which it was situated. The heirs of the decedent, it is alleged, also resided in that county, and were duly notified of the pendency of the proceedings. Under these circumstances, we hold that the court had jurisdiction of both the subject matter of the petition, and of the persons of the heirs, and hence the sale and conveyance to *Squires* was not a nullity, and the court below therefore erred in sustaining the demurrer to the third paragraph of the answer.

The conclusion at which we have arrived upon the first question presented, renders it unnecessary that we should examine the second.

The judgment and decree of the court below is reversed, with costs, and the cause remanded, with instructions to that court to overrule the demurrer to the third paragraph of the answer, and for further proceedings not inconsistent with this opinion.

*Williamson* and *Daggy,* for appellant.

*E. Miles* and *E. A. Davis,* for appellee.